UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JAMES OWENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) 3:25-cv-03161-MMM |
| LATOYA HUGHES, *et al.* | ) ) ) |
| Defendants. | ) ) |

**ORDER**

Plaintiff, proceeding pro se and presently incarcerated at Pinckneyville Correctional Center seeks to proceed under 42 U.S.C. § 1983 to challenge various aspects of the proposed terms of his state court mandatory supervised release. Several matters are before the Court and will be addressed in turn.

**A. Merit Review**

The court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief

that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### **Allegations**

Plaintiff names as Defendants IDOC Director Latoya Hughes, the Illinois Prisoner Review Board, the Chair and several Members of the Prisoner Review Board, Illinois Parole Chief Jason Garnett, Deputy Illinois Parole Chief Dion Dixon, John Does, and Alyssa Williams.

Plaintiff is 66 years old. In 1979, in California, Plaintiff sexually abused a six-year-old girl he was left alone with at the house of an acquaintance. He alleges he "had been curious about engaging in sexual intercourse with a young girl." He was arrested, charged, found guilty, and sentenced to five years' imprisonment. After serving that time he was diverted to a mandatory treatment facility where he received treatment over the next forty-two months. Plaintiff there admitted to "fondling" four other girls in the past, when he had been left alone with them. Plaintiff moved to Illinois in 1983, met his "life partner" Brenda, and they had a son in 1985. In about 1999 Plaintiff sexually assaulted his son's friend Brittany repeatedly over a period of 7 or 8 months. Plaintiff pled guilty to a criminal charge based on those actions and was sentenced to 30 years in prison. He is nearing the end of that sentence.

He now seeks to challenge the constitutionality of the Illinois Prisoner Review Board's Order setting the terms of his Mandatory Supervised Relief. Plaintiff argues that for various reasons that Order is constitutionally infirm.

Analysis

Plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and the precedent developed therefrom. *Heck* prohibits a prisoner from obtaining relief in a § 1983 suit where a judgment in [his] favor "would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. This is so, unless "the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489.

The *Heck*-bar applies to terms of mandatory supervised release because "[f]or parolees, the ... 'conditions' of parole are the confinement." *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003); *Ortega v. Ford*, No. 23-1784, 2024 WL 1634072, at *3 (7th Cir. Apr. 16, 2024), *cert. denied*, 145 S. Ct. 437 (2024).

Here, there is no indication that Plaintiff has attempted to invalidate this aspect of his sentence through collateral attack in one full round of state court review followed by petitioning a federal court for federal habeas relief. Those are the steps Plaintiff must take to try to invalidate the terms of his sentence, rather than this civil suit under § 1983. If successful in invalidating his sentence, and if he could plausibly allege that he was somehow injured, it is possible that perhaps he could then pursue a suit like this one.

**B. Motion to Request Counsel**

Plaintiff requests that the Court appoint counsel on his behalf. Doc. 5.

The Seventh Circuit has summarized the legal standard for Plaintiff's request as follows:

Under 28 U.S.C. § 1915(e)(1), a federal court "may request an attorney to represent any person unable to afford counsel." The statute is "entirely permissive." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Civil litigants have no constitutional or statutory right to court-appointed counsel, and § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel." *Id.* at 653 (quoting *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)). Rather, the statute "codifies the court's discretionary authority to recruit a lawyer to represent an indigent civil litigant *pro bono publico*." *Id.*

"Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). "District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Id.*

Accordingly, we have recently explained that "the decision whether to recruit a lawyer for a particular plaintiff is made against the twofold backdrop of a high volume of indigent, pro se litigants (particularly incarcerated individuals) and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono." *Watts v. Kidman*, 42 F.4th 755, 763 (7th Cir. 2022). Based on these and other practical considerations, we have held that district judges should engage in a two-step inquiry when faced with a request for pro bono counsel under § 1915(e)(1), asking first "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654.

The first step needs no elaboration. Step two "can be complex" and involves a pragmatic judgment about the difficulty of the case and the plaintiff's ability to present it to the court on his own. *Watts*, 42 F.4th at 760. "The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Pruitt*, 503 F.3d at 655. A judge will normally consider "the plaintiff's literacy, communication skills, educational level, and litigation experience" along with any evidence in the record "bearing on the plaintiff's intellectual capacity and psychological history." *Id.* But these are merely factors that are ordinarily relevant. No one factor is "necessary or conclusive." *Id.* at 655 n.9. Indeed, "[t]here are no fixed requirements for determining a plaintiff's competence to litigate his own case." *Id.* at 655. Ultimately, the "inquiry into

> the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id.*
>
> Finally, "the decision whether to recruit pro bono counsel is left to the district court's discretion." *Id.* at 654. Our job is to ensure that this discretion is exercised in accordance with appropriate legal principles. The "question on appellate review is not whether we would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Id.* at 658.

*Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024). In determining the second step, the Court may view the case through the lens of certain factors that the Seventh Circuit has enumerated.

> Though this inquiry must be case-and plaintiff-specific, we have identified circumstances that tend to diminish a prisoner-plaintiff's ability to litigate pro se, such as when: (1) the case reaches later stages of litigation, (2) the plaintiff is transferred to another facility and loses access to relevant witnesses or evidence, (3) the claim depends on the state of mind of the defendant, and (4) expert testimony is necessary to prove the claim.

*Owens v. Wexford Health Sources, et al.*, No. 22-2882, 2024 WL 5242367, at *3 (7th Cir. Dec. 30, 2024), citing *James v. Eli*, 889 F.3d 320, 327-28 (7th Cir. 2018).

Here, first, Plaintiff has not shown a reasonable attempt to obtain counsel on his own, nor has he shown he cannot do so. He indicates he was at a time held in segregation, but he is now at a different prison and has been in regular written communication with the Courts. Plaintiff must attempt to find an attorney by writing to several attorneys, specific to this lawsuit, and if unsuccessful may renew his motion, attaching copies of his request letters sent along with any responses received.

As to the second inquiry, Plaintiff's claims are not factually difficult; he alleges his rights were violated under his sentence. However, working out exactly who did what at

what time in relation to decisions that were made may be difficult to prove because Plaintiff does not have personal knowledge of some of those facts, and has moved prisons several times. This factor somewhat favors a search for counsel on Plaintiff's behalf. Written discovery would produce to Plaintiff the relevant conviction and sentence records related to his claims, though, making the factual difficulty overall a wash.

Plaintiff's claims are not particularly legally difficult, though all federal litigation is difficult to a degree. Plaintiff's pleadings are clear and legible. They are coherent. And Plaintiff has extensive federal litigation experience, which weighs against appointing counsel. Plaintiff's education level is not before the Court, but once again he appears well able to communicate. There is no information before the Court that indicates Plaintiff is mentally impaired to the extent that he cannot represent himself.

Most importantly, it appears this case is without legal merit as brought, and so recruitment of counsel would be a poor use of Court resources in this case.

Here, looking at Plaintiff's abilities compared with the many other unrepresented litigants who ask for help finding a free lawyer, considering all the factors, and in an exercise of its discretion, the Court finds Plaintiff can adequately continue representing himself.

**IT IS THEREFORE ORDERED:**

    1.    **Plaintiff's Motion for Appointment of Counsel [5] is DENIED.**

    2.    **Plaintiff's Motion for Expedited Hearing [6] is DENIED.**

    3.    **Plaintiff's motions for status [7], [8] are DENIED as MOOT.**

    4.    **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff's claims are not cognizable as they must be pursued as**

**collateral attacks to his sentence rather than under § 1983. As such, Plaintiff's allegations do not state a claim. This action is dismissed with prejudice. Plaintiff must first proceed in state court and federal habeas if he wants to challenge the terms of his sentence. Judgment to enter for Defendants. A future court may find this dismissal counts under 28 U.S.C. § 1915(g).**

Entered this 2nd day of February, 2026.

*s/Michael M. Mihm*
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE
